IN THE CIRCUIT COURT OF THE FIFTH
JUDICIAL CIRCUIT, IN AND FOR
SUMTER COUNTY, FLORIDA

ANNE RENEE TESTA,

CASE NO.: 2015-CA-000188

      Plaintiff,

vs.

SETH GROSSMAN, an individual, and J.P.
MORGAN CHASE BANK, N.A., as a
stakeholder,

      Defendants.

_____/

## COMPLAINT

Plaintiff, ANNE RENEE TESTA, through her undersigned counsel, sues Defendants,

Seth Grossman and J.P. Morgan Chase Bank, N.A., and states:

### GENERAL ALLEGATIONS

1.      This is an action for damages in excess of $15,000, exclusive of attorneys' fees

and costs, and for declaratory relief.

2.      Plaintiff, DR. ANNE RENEE TESTA ("Dr. Testa), is an individual who resides

at 10162 Lake Miona Way, Oxford, Florida 34484.

3.      Venue is proper in Sumter County, Florida because the cause of action arose in

such county, JP Morgan has its offices in Sumter County, Florida, and because the personal

property at issue is located in Sumter county, Florida.

4.      Defendant, Seth Grossman ("Grossman"), is an individual who resides at 25

Huckleberry Lane, East Hampton, NY 11937, and he is Dr. Testa's son. This court has

jurisdiction over Grossman under Florida's long arm statute as Grossman is a purported co-

owner of two bank accounts located in Sumter County, Florida and has committed a tort the

effects of which have resulted in damages to Plaintiff in Sumter, County, Florida.

5.    Defendant, J.P. Morgan Chase Bank, N.A., ("J.P. Morgan") is a national banking institution, and a foreign corporation authorized to do business in Florida. J.P. Morgan is located at Northeast Market, P.O. Box 659754, San Antonio, TX 78265-9754. J.P. Morgan is only being sued as a stakeholder of accounts belonging to Dr. Testa. This court has personal jurisdiction over J.P. Morgan under Florida's long arm statute as J.P. Morgan has several offices in Florida, including in Sumter County, and regularly conducts business in Florida.

6.    None of the individual defendants are in the military service of the United States of America or any of its allies nor are any of them in the military service of the State of Florida as of the date of service of this complaint and summons upon them. None of such individual defendants are entitled to protection under the Soldiers and Sailors Civil Relief Act of the United States of America (50 USC 510 et. seq.) or the Soldiers and Airmen Relief Act of the State of Florida (250.5201 et. seq., Florida Statutes, 1996).

7.    Dr. Testa was born in 1942, and she was a successful psychologist for many years until her retirement.

8.    Grossman is her son. He is manic depressive and refuses to take medication for his illness. He has not been employed for many years.

9.    Dr. Testa was the Trustee of the Anne Renee Tanner Residence Trust, u/t/i dated May 15, 1996 (the "Trust") which owned a home located at 25 Huckleberry Lane, East Hampton, New York 11937 (the "Property"). The Property is worth approximately $1.2 million.

10.    There is a mortgage on the Property and the current balance is approximately $330,000. Dr. Testa is the only individual obligated on the mortgage, and has made all of the mortgage payments.

11.    Dr. Testa was married twice. Her first husband passed away, and Dr. Testa and her second husband got divorced in 2013.

2

12.     Dr. Testa also owns two accounts at J.P. Morgan which she has owned for several years.  One account is known as the J.P. Morgan Investment Fund (account number ending in 2005) ("Investment Account"), and contains approximately $87,700. The other account is a stock account that has FRMO stock worth approximately $3.9 million (account number ending in 5437) ("Stock Account")..

13.     After Dr. Testa and her husband divorced, her son offered her his assistance in paying her bills and managing her finances. She agreed to allow Grossman to help her manage her bills and her finances.

14.     On April 7, 2013, she added Grossman as a joint tenant with right of survivorship to the Investment Account and the Stock Account as a convenient way to allow her son to assist her in paying her bills. Dr. Testa never intended to make a present gift of the assets in the account to Grossman, and she did not understand the legal significance of joint tenants with right of survivorship at the time the account was set up which her son participated in arranging.

15.     Furthermore, on May 16, 2014, Grossman took Plaintiff to an attorney <u>he selected</u> and had his mother  execute a Durable Power of Attorney naming Grossman and Plaintiff's daughter, Joy Melissa Grossman ("Joy") as her attorneys-in-fact. Attached hereto as Exhibit "A" is a copy of the Durable Power of Attorney. <u>Plaintiff did not understand or know that by signing the power of attorney, she was giving Grossman the right to take control of her assets.</u>

16.     On November 21, 2014, Grossman <u>persuaded</u> Dr. Testa to deed the Property from her trust to herself, and then to Grossman and Joy as joint owners.  Attached as Exhibits "B" and "C" are copies of the deeds. Grossman and his attorney represented to Dr. Testa that it was <u>needed for tax purposes</u>. Furthermore, Grossman <u>failed to tell Plaintiff</u> that she still would

3

be legally responsible for paying the mortgage and all household related expenses, and that notwithstanding the title transfer, the outstanding mortgage was never satisfied by the new owners.

17. Dr. Testa was residing in the Property with Grossman until March 15, 2015 when Grossman had a violent episode, yelling at Plaintiff and damaging a door with his fist, resulting in a visit to an emergency room with a broken wrist. As a result of this incident, Plaintiff decided to move out of the Property and relocate her residence to Florida.

18. On April 5, 2015, Dr. Testa went on a vacation. When she returned, she discovered that Grossman had removed $40,000 from the Investment Account, and that $15,000 in FRMO stock had been liquidated from the Stock Account, all without the knowledge or consent of Plaintiff. Grossman represented that the money was being used for repairs and improvements to the Property, but Plaintiff has not been provided with documentation to support this assertion. As of the date of filing this Complaint, it appears that approximately $8,000 may have been used for repairs to the Property, but the rest of the money has not been accounted for by Grossman.

19. Additionally, Grossman also transferred $2,750 a month to himself from Dr. Testa's checking account since taking control of her accounts. Based upon information and believe, the money has been used by Grossman to his sole benefit.

20. Grossman also persuaded Dr. Testa to purchase a vehicle for him in her name. Dr. Testa took out a car loan to pay for the vehicle and the balance on the loan as of the date of this Complaint is approximately $15,000.

21. Grossman through undue influence also persuaded Dr. Testa to execute a construction contract to remodel the Property. The contract signed by Plaintiff at Grossman's

4

direction obligated her to pay $50,000 for repairs to the Property where Grossman resides and which Grossman now owns with his sister.

22.     Dr. Testa was advised by J.P. Morgan that her accounts were being handled out of the bank's Sumter county, FL office and no longer out of New York. Accordingly, Plaintiff contacted J.P. Morgan in Sumter County and asked Grossman's name be removed from her accounts. In response, J.P. Morgan sent correspondence stating it could not do so without Grossman's consent or a court order. A copy of the correspondence is attached as Exhibit "D".

23.     All of the conditions precedent to filing this action have been met or waived.

## COUNT I- UNDUE INFLUENCE (GROSSMAN ONLY)

24.     This is an action for equitable relief and damages exceeding $15,000.00 resulting from undue influence.

25.     Plaintiffs re-allege and reincorporate paragraphs 1-23 above as if fully set forth herein.

26.     At all material times, a confidential relationship and trust existed between Plaintiff and Grossman so that Plaintiff fully trusted and confided in Grossman to handle her affairs and act in her best interest.

27.     Grossman abused this confidential relationship and trust by exerting undue influence over Dr. Testa in order to obtain Dr. Testa's funds and to take other actions that benefited him.

28.     Grossman did so at a time when Dr. Testa was advanced in age and had come to rely on him to help manage her finances.

29.     Grossman's receipt of Dr. Testa's funds was not a result of gifts freely given by Dr. Testa but rather was a product of Grossman's undue influence.

30.     As a direct and proximate result of Grossman's undue influence, Dr. Testa has been damaged and is entitled to damages, and equitable relief, including the removal of Grossman's name from the J.P. Morgan accounts.

WHEREFORE, Plaintiff requests that the Court enter a judgment against SETH GROSSMAN, for the damages sustained by Dr. Testa, including pre-judgment and post-judgment interest and costs, and further enter an order removing Grossman's name from Dr. Testa's Investment Account and Stock Account, and grant such other relief as the Court may deem just and proper.

## COUNT II- DECLARATORY RELIEF (ALL DEFENDANTS)

The allegations of paragraphs 1-23 are re-alleged and incorporated herein by reference.

31.     This is an action for declaratory relief pursuant to Chapter 86, Florida Statutes.

32.     There is a bona fide, actual, present practical need for the court to declare the ownership of the JP Morgan accounts, specially the Investment Account and the Stock Account, to be the sole property of Plaintiff.

33.     The relief sought is not merely the giving of legal advice by the court, or to answer questions propounded from curiosity.

34.     The Plaintiff seeks a declaration that the JP Morgan accounts belong solely to Plaintiff, and that JP Morgan shall remove Grossman's name from such accounts.

WHEREFORE, Plaintiff, ANNE RENEE TESTA, demands judgment against Defendants, declaring the rights of the parties as requested herein, including ownership of the accounts, costs, and such further relief as this Court deems just and proper.

Dated this _____ day of June, 2015.

/s/ Stephanie L. Cook
Stephanie L. Cook
Florida Bar No. 044368
Alexander S. Douglas, II
Florida Bar No. 817422
**Shuffield, Lowman & Wilson, P.A.**
1000 Legion Place, Suite 1700
P.O. Box 1010
Orlando, FL 32802-1010
Telephone: (407) 581-9800
Facsimile: (407) 581-9801
Attorneys for Plaintiff
The Primary email address for electronic
service of all pleadings in this case under Rule
2.516 is: litservice@shuffieldlowman.com

## POWER OF ATTORNEY
### NEW YORK STATUTORY SHORT FORM

(a) **CAUTION TO THE PRINCIPAL:** *Your Power of Attorney is an important document. As the "principal," you give the person whom you choose (your "agent") authority to spend your money and sell or dispose of your property during your lifetime without telling you. You do not lose your authority to act even though you have given your agent similar authority.*

*When your agent exercises this authority, he or she must act according to any instructions you have provided or, where there are no specific instructions, in your best interest. "Important Information for the Agent" at the end of this document describes your agent's responsibilities.*

*Your agent can act on your behalf only after signing the Power of Attorney before a notary public.*

*You can request information from your agent at any time. If you are revoking a prior Power of Attorney, you should provide written notice of the revocation to your prior agent(s) and to any third parties who may have acted upon it, including the financial institutions where your accounts are located.*

*You can revoke or terminate your Power of Attorney at any time for any reason as long as you are of sound mind. If you are no longer of sound mind, a court can remove an agent for acting improperly. Your agent cannot make health care decisions for you. You may execute a "Health Care Proxy" to do this.*

*The law governing Powers of Attorney is contained in the New York General Obligations Law, Article 5, Title 15. This law is available at a law library, or online through the New York State Senate or Assembly websites, www.senate.state.ny.us or www.assembly.state.ny.us.*

*If there is anything about this document that you do not understand, you should ask a lawyer of your own choosing to explain it to you.*

(b) **DESIGNATION OF AGENT(S):**

I, *ANNE-RENNE TESTA,* residing at 25 Huckleberry Lane, East Hampton, NY 11937, hereby appoint:

*SETH HARRIS GROSSMAN,* residing at 25 Huckleberry Lane, East Hampton, NY 11937 and *JOY MELISSA GROSSMAN,* residing at 2113 45th Avenue, Garden Level, Long Island City, NY 11101, as my agent(s)

*If you designate more than one agent above, they must act together unless you initial the statement below.*

☑ My agents may act SEPARATELY.

(c) **DESIGNATION OF SUCCESSOR AGENT(S): (OPTIONAL)**

If any agent designated above is unable or unwilling to serve, I appoint as my successor agent(s):

_____, residing at _____.

Successor agents designated above must act together unless you initial the statement below.

[ . ]  My successor agents may act SEPARATELY.

Page 1 of 7 Pages



(d) This **POWER OF ATTORNEY** shall not be affected by my subsequent incapacity unless I have stated otherwise below, under "Modifications".

(e) This **POWER OF ATTORNEY DOES NOT REVOKE** any Powers of Attorney previously executed by me unless I have stated otherwise below, under "Modifications".

*If you do NOT intend to revoke your prior Powers of Attorney, and if you have granted the same authority in this Power of Attorney as you granted to another agent in a prior Power of Attorney, each agent can act separately unless you indicate under "Modifications" that the agents with the same authority are to act together.*

**(f) GRANT OF AUTHORITY:**

*To grant your agent some or all of the authority below, either (1) Initial the bracket at each authority you grant, or (2) Write or type the letters for each authority you grant on the blank line at (P), and initial the bracket at (P). If you initial (P), you do not need to initial the other lines.*

I grant authority to my agent(s) with respect to the following subjects as defined in sections 5-1502A through 5-1502N of the New York General Obligations Law:

[    ]    (A)    real estate transactions;
[    ]    (B)    chattel and goods transactions;
[    ]    (C)    bond, share and commodity transactions;
[    ]    (D)    banking transactions;
[    ]    (E)    business operating transactions;
[    ]    (F)    insurance transactions;
[    ]    (G)    estate transactions;
[    ]    (H)    claims and litigation;
[    ]    (I)    personal and family maintenance: If you grant your agent this authority, it will allow the agent to make gifts that you customarily have made to individuals, including the agent, and charitable organizations.  The total amount of all such gifts in any one calendar year cannot exceed five hundred dollars;
[    ]    (J)    benefits from governmental programs or civil or military service;
[    ]    (K)    health care billing and payment matters; records, reports and statements;
[    ]    (L)    retirement benefit transactions;
[    ]    (M)    tax matters;
[    ]    (N)    all other matters;
[    ]    (O)    full and unqualified authority to my agent(s) to delegate any or all of the foregoing powers to any person or persons whom my agent(s) select;
[*illegible*]    (P)    EACH of the matters identified by the following letters: (A) – (O)

*You need not initial the other lines if you initial line (P).*

## (g) MODIFICATIONS: (OPTIONAL)

*In this section, you may make additional provisions, including language to limit or supplement authority granted to your agent. However, you cannot use this Modifications section to grant your agent authority to make gifts or changes to interests in your property. If you wish to grant your agent such authority, you MUST complete the Statutory Gifts Rider.*

[    ]  (A)  enter any safe deposit box or other place of safekeeping standing in the name of the principal alone or jointly with another and to remove the contents of the principal and make additions, substitutions or replacements of the contents of the principal;

[    ]  (B)  prepare, execute and file income, gift and other tax returns required by the laws of the United States or of any state or subdivision thereof, to confer with revenue agents, execute and file refund claims, collect any tax refunds, execute agreements extending the statute of limitations, represent the principal or obtain representation for the principal before the Tax Court of the United States or any other court in connection with all income, gift or other tax matters; sign federal Form 2848 and any similar state form as may be necessary and permissible by the taxing authority;

[    ]  (C)  represent the principal in all matters before the Social Security Administration, any state Medicaid agency, or any other governmental agency in charge of benefits and entitlement programs, including, but not limited to, the power to make an application for benefits, and appeal the denial, reduction or discontinuation of benefits;

[    ]  (D)  represent the principal in all matters before any governmental agency, board or tribunal on the federal, state or local level;

[    ]  (E)  exercise all statutory elections against the estate or property of any person from which such right is derived;

[    ]  (F)  exercise my rights over and/or make decisions pertaining to my retirement plans, including individual retirement accounts, rollovers and voluntary contributions; to apply for and receive benefits thereunder;

[    ]  (G)  exercise all rights which the principal may have in any life, health and long-term care insurance policy, including, but not limited to, the power to collect proceeds from, the right to borrow against or surrender any policy, or exercise any options under said policy;

[    ]  (H)  create, amend, revoke or terminate any inter vivos trusts, whether revocable or irrevocable, on behalf of the principal; to fund such trusts on behalf of the principal or to make transfers and additions to any trusts already in existence, in a manner consistent with my estate plan;

[    ]  (I)  lend or borrow on such terms and with such security as my agent may decide in his sole discretion and to execute all notes, mortgages and other instruments relating to such;

[    ]  (J)  to change or maintain my abode, domicile or residency for any and all purposes, ~~including placement in an assisted living facility or skilled nursing facility~~, should that be necessary, and to take any and all actions to effectuate the foregoing, including but not limited to, executing a Declaration of Intent to Return Home;

[    ]  (K)  serve as the guardian of my person and property, to serve without bond, in the event that I shall be declared unable to manage my affairs pursuant to Article 81 of the Mental Hygiene Law of the State of New York or any statute corresponding thereto;

[    ]  (L)  enter into buy/sell agreements, personal services contracts or any other contract or arrangement on my behalf with any person including my agent;

[    ]  (M)  retain, discharge, and pay for the services of attorneys, accountants, financial planners, geriatric care managers, social workers and other health care professionals;

✓  [initials]  (N)  Each of the above matters identified by the letters: (A) through and including (M).

Page 3 of 7 Pages

**(h) CERTAIN GIFT TRANSACTIONS: STATUTORY GIFTS RIDER    (OPTIONAL)**

*In order to authorize your agent to make gifts in excess of an annual total of $500 for all gifts described in (I) of the Grant of Authority section of this document (under personal and family maintenance), you must initial the statement below and execute a Statutory Gifts Rider at the same time as this instrument. Initialing the statement below by itself does not authorize your agent to make gifts. The preparation of the Statutory Gifts Rider should be supervised by a lawyer.*

[ _ARJ_ ] (SGR) I grant my agent authority to make gifts in accordance with the terms and conditions of the Statutory Gifts Rider that supplements this Statutory Power of Attorney.

**(i) DESIGNATION OF MONITOR(S): (OPTIONAL)**

If you wish to appoint monitor(s), initial and fill in the section below.

[   ]    I wish to designate _____, whose address(es) is (are) _____, as monitor(s). Upon the request of the monitor(s), my agent(s) must provide the monitor(s) with a copy of the power of attorney and a record of all transactions done or made on my behalf. Third parties holding records of such transactions shall provide the records to the monitor(s) upon request.

**(j) COMPENSATION OF AGENT(S): (OPTIONAL)**

Your agent is entitled to be reimbursed from your assets for reasonable expenses incurred on your behalf. If you ALSO wish your agent(s) to be compensated from your assets for services rendered on your behalf, initial the statement below. If you wish to define "reasonable compensation", you may do so above, under "Modifications".

[   ] My agent(s) shall be entitled to reasonable compensation for services rendered.

**(k) ACCEPTANCE BY THIRD PARTIES:**

I agree to indemnify the third party for any claims that may arise against the third party because of reliance on this Power of Attorney. I understand that any termination of this Power of Attorney, whether the result of my revocation of the Power of Attorney or otherwise, is not effective as to a third party until the third party has actual notice or knowledge of the termination.

**(l) TERMINATION:**

This Power of Attorney continues until I revoke it or it is terminated by my death or other event described in Section 5-1511 of the General Obligations Law.

Section 5-1511 of the General Obligations Law describes the manner in which you may revoke your Power of Attorney, and the events which terminate the Power of Attorney.

**(m) SIGNATURE AND ACKNOWLEDGEMENT:**

In Witness Whereof I have hereunto signed my name on *May 16*, 2014.

PRINCIPAL signs here → *Anne Renee Testa*

ANNE-RENEE TESTA

Page 4 of 7 Pages

State of New York)

County of Suffolk)         ) ss.:

On the _16th_ day of _May_, in the year 2014, before me, the undersigned, a Notary Public in and for said state, personally appeared ANNE-RENEE TESTA, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

_____
Notary Public

CHRISTOPHER KELLEY
Notary Public, State of New York
No. 4763431, Qual. Suffolk Co ///
Commission Expires July 31, 2016 ///

**(n) IMPORTANT INFORMATION FOR THE AGENT:**

When you accept the authority granted under this Power of Attorney, a special legal relationship is created between you and the principal. This relationship imposes on you legal responsibilities that continue until you resign or the Power of Attorney is terminated or revoked. You must:

    (1)  act according to any instructions from the principal, or, where there are no instructions, in the principal's best interest;
    (2)  avoid conflicts that would impair your ability to act in the principal's best interest;
    (3)  keep the principal's property separate and distinct from any assets you own or control, unless otherwise permitted by law;
    (4)  keep a record of all receipts, payments and transactions conducted for the principal; and
    (5)  disclose your identity as an agent whenever you act for the principal by writing or printing the principal's name and signing your own name as "agent" in either of the following manners: (Principal's Name) by (Your Signature) as Agent, or (Your Signature) as Agent for (Principal's Name).

You may not use the principal's assets to benefit yourself or anyone else or make gifts to yourself or anyone else unless the principal has specifically granted you that authority in this document, which is either a Statutory Gifts Rider attached to a Statutory Short Form Power of Attorney or a Non-Statutory Power of Attorney. If you have that authority, you must act according to any instructions of the principal or, where there are no such instructions, in the principal's best interest. You may resign by giving written notice to the principal and to any co-agent, successor agent, monitor if one has been named in this document, or the principal's guardian if one has been appointed. If there is anything about this document or your responsibilities that you do not understand, you should seek legal advice.

Liability of agent: The meaning of the authority given to you is defined in New York's General Obligations Law, Article 5, Title 15. If it is found that you have violated the law or acted outside the authority granted to you in the Power of Attorney, you may be liable under the law for your violation.

Page 5 of 7 Pages

**(o) AGENT'S SIGNATURE AND ACKNOWLEDGEMENT OF APPOINTMENT:**

It is not required that the principal and the agent(s) sign at the same time, nor that multiple agents sign at the same time.

I/we _____

have read the foregoing Power of Attorney.   I am/we are the person(s) identified therein as agent(s) for the principal named therein.

I/we acknowledge my/our legal responsibilities.

AGENT(S) sign(s) here →   _____

→   _____

State of                           )
                                        ) ss.:
County of                        )

On the _____ day of _____, in the year _____, before me, the undersigned, a Notary Public in and for said state, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

_____
Notary Public

State of                           )
                                        ) ss.:
County of                        )

On the _____ day of _____, in the year _____, before me, the undersigned, a Notary Public in and for said state, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

_____
Notary Public

Page 6 of 7 Pages

(p)    **SUCCESSOR AGENT'S SIGNATURE AND ACKNOWLEDGEMENT OF APPOINTMENT:**

It is not required that the principal and the SUCCESSOR agent(s), if any, sign at the same time, nor that multiple SUCCESSOR agents sign at the same time. Furthermore, successor agents can not use this power of attorney unless the agent(s) designated above is/are unable or unwilling to serve.

I/we, _____, have read the foregoing Power of Attorney. I am/we are the person(s) identified therein as SUCCESSOR agent(s) for the principal named therein.

Successor Agent(s) sign(s) here →  _____

→  _____

State of                     )
                             ) ss.:
County of                    )

On the _____ day of _____, in the year _____, before me, the undersigned, a Notary Public in and for said state, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

_____
Notary Public

State of                     )
                             ) ss.:
County of                    )

On the _____ day of _____, in the year _____, before me, the undersigned, a Notary Public in and for said state, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

_____
Notary Public

Page 7 of 7 Pages

POWER OF ATTORNEY
NEW YORK STATUTORY GIFTS RIDER
AUTHORIZATION FOR CERTAIN GIFT TRANSACTIONS

*CAUTION TO THE PRINCIPAL: This OPTIONAL rider allows you to authorize your agent to make gifts in excess of an annual total of $500 for all gifts described in (I) of the Grant of Authority section of the statutory short form Power of Attorney (under personal and family maintenance), or certain other gift transactions during your lifetime. You do not have to execute this rider if you only want your agent to make gifts described in (I) of the Grant of Authority section of the statutory short form Power of Attorney and you initialed "(I)" on that section of that form. Granting any of the following authority to your agent gives your agent the authority to take actions which could significantly reduce your property or change how your property is distributed at your death. "Certain gift transactions" are described in section 5-1514 of the General Obligations Law. This Gifts Rider does not require your agent to exercise granted authority, but when he or she exercises this authority, he or she must act according to any instructions you provide, or otherwise in your best interest.*

*This Gifts Rider and the Power of Attorney it supplements must be read together as a single instrument.*

*Before signing this document authorizing your agent to make gifts, you should seek legal advice to ensure that your intentions are clearly and properly expressed.*

(a)    **GRANT OF LIMITED AUTHORITY TO MAKE GIFTS:**

*Granting gifting authority to your agent gives your agent the authority to take actions which could significantly reduce your property.*

*If you wish to allow your agent to make gifts to himself or herself, you must separately grant that authority in subdivision (c) below.*

*To grant your agent the gifting authority provided below, initial the bracket to the left of the authority.*

[ ] I grant authority to my agent to make gifts to my spouse, children and more remote descendants, and parents, not to exceed, for each donee, the annual federal gift tax exclusion amount pursuant to the Internal Revenue Code. For gifts to my children and more remote descendants, and parents, the maximum amount of the gift to each donee shall not exceed twice the gift tax exclusion amount, if my spouse agrees to split gift treatment pursuant to the Internal Revenue Code. This authority must be exercised pursuant to my instructions, or otherwise for purposes which the agent reasonably deems to be in my best interest.

Page 1 of 5 Pages

**(b)  MODIFICATIONS:**

*Use this section if you wish to authorize gifts in amounts smaller than the gift tax exclusion amount, in amounts in excess of the gift tax exclusion amount, gifts to other beneficiaries, or other gift transactions. Granting such authority to your agent gives your agent the authority to take actions which could significantly reduce your property and/or change how your property is distributed at your death. If you wish to authorize your agent to make gifts to himself or herself, you must separately grant that authority in subdivision (c) below.*

[ ✓  ] I grant the following authority to my agent to make gifts pursuant to my instructions, or otherwise for purposes which the agent reasonably deems to be in my best interest:

My agent(s) or successor agent(s) shall have the authority over each matter below where I have placed my initials.

[    ]  (A)  make gifts of any amount, in cash or in kind, on my behalf to any person or persons, in a manner consistent with my estate plan;

[    ]  (B)  make gifts to any charitable organization customarily made by the principal;

[    ]  (C)  exercise my rights over and/or make decisions pertaining to my retirement plans, including individual retirement accounts, rollovers and voluntary contributions; to apply for and receive benefits thereunder; to designate or alter designated beneficiaries of ERISA and/or all other retirement plans;

[    ]  (D)  exercise all rights which the principal may have in life insurance policies, including, but not limited to, the right to borrow against or assign said policy, to designate or change the designated beneficiary thereof, to exercise any options under said policy, and to transfer ownership thereof;

[    ]  (E)  create, amend, revoke or terminate any inter vivos trusts, whether revocable or irrevocable, on behalf of the principal; to fund such trusts on behalf of the principal or to make transfers and additions to any trusts already in existence;

[    ]  (F)  lend or borrow on such terms and with such security as my agent may decide in his sole discretion and to execute all notes, mortgages and other instruments relating to such;

[    ]  (G)  disclaim in whole or in part, any interest or power passing to the principal by will or by intestate succession or by any other means;

[    ]  (H)  open, modify, withdraw from, deposit to or terminate a deposit account in the name of the principal and other joint tenants;

[    ]  (I)  open, modify, withdraw from, deposit to or terminate any other joint account in the name of the principal and other joint tenants;

[    ]  (J)  open, modify, withdraw from, deposit to or terminate a bank account in trust form as described in Section 7-5.1 of the Estates, Powers and Trusts Law, and designate or change the beneficiary or beneficiaries of such account;

[    ]  (K)  open, modify, withdraw from, deposit to or terminate a transfer on death account as described in Part Four of Article Thirteen of the Estates, Powers and Trusts Law, and designate and/or change the beneficiary or beneficiaries of such account;

[    ]  (L)  exercise all rights which the principal may have in any annuity contract, including but not limited to changing the beneficiary or beneficiaries of any annuity contract for the benefit of the principal and/or assign or transfer ownership of said annuity contract;

Page 2 of 5 Pages

[   ]  (M)  procure new, different or additional contracts of insurance on the life of the principal or annuity contracts for the benefit of the principal and designate the beneficiary or beneficiaries of any such contract;

[   ]  (N)  open, modify, terminate or transfer a custodial account or tuition savings account or prepaid tuition plan as defined under Section 529 of the Internal Revenue Code, including the right to name successor custodian(s) or owner thereto;

[   ]  (O)  create, change or terminate other property interests or rights of survivorship, and designate or change the beneficiary or beneficiaries therein;

[   ]  (P)  to prepare, execute, consent to on behalf of the principal, and file any return, report, declaration or other document required by the laws of the United States, or by any state or political subdivision thereof, or by any foreign country or political subdivision thereof, which the agent deems to be desirable or necessary with respect to any gift made under the authority of this section;

[   ]  (Q)  to execute, acknowledge, seal and deliver any deed, assignment, agreement, trust agreement, authorization, check or other instrument which the agent deems useful for the accomplishment of any of the purposes enumerated in this section;

[   ]  (R)  to prosecute, defend, submit to alternative dispute resolution, settle and propose or accept a compromise with respect to any claim existing in favor of or against the principal based on or involving any gift transaction or to intervene in any related action or proceeding;

[   ]  (S)  to hire, discharge and compensate any attorney, accountant, expert witness or other assistant or assistants when the agent deems that action to be desirable for the proper execution by the agent of any of the authorities described in this section and for the keeping of needed records thereof;

[   ]  (T)  in general, and in addition to but not in contravention of all the specific acts listed in this section, to do any other act or acts which the agent deems desirable or necessary to complete any such gift on behalf of the principal;

[   ]  (U)  A gift or other transfer of property may be made outright, by exercise or release of a presently exercisable general or special power of appointment held by the principal, to a trust established or created for such individual, to a Uniform Transfers to Minors Act account for such individual (regardless of who is the custodian), or to a tuition savings account or prepaid tuition plan as defined under Section 529 of the Internal Revenue Code for the benefit of such individual (without regard to who is the account owner or responsible individual for such account);

[   ]  (V)  In making gifts of my property, my "best interest" shall include gifts which would be likely to cause a reduction in estate tax due or which would carry out a plan for the protection of my assets against the costs of nursing home care in the foreseeable future; and

[GDG]  (W)  I grant the authority to my agent(s) or successor agent(s) to make gifts or transfers pursuant to my instructions or as my agent reasonably deems to be in my best interest for each of the matters identified by the letter (A) through and including (V) above.

**(f)    SIGNATURES OF WITNESSES:**

By signing as a witness, I acknowledge that the principal signed the Statutory Gifts Rider in my presence and the presence of the other witness, or that the principal acknowledged to me that the principal's signature was affixed by him or her or at his or her direction. I also acknowledge that the principal has stated that this Statutory Gifts Rider reflects his or her wishes and that he or she has signed it voluntarily. I am not named herein as a permissible recipient of gifts.

| | |
|---|---|
| _____ | _____ |
| Signature of Witness 1 | Signature of Witness 2 |
| May 16, 2014 | May 16, 2014 |
| Date | Date |
| Christopher Kelley | PIERCE KELLEY |
| Print Name | Print Name |
| 727 Accabonac Rd. | 727 Accabonac Rd. |
| Address | Address |
| East Hampton, N.Y. 11937 | East Hampton, NY 11937 |
| City, State, Zip Code | City, State, Zip Code |

**(g)  This document prepared by:**

Christopher Kelley, Esq.
Twomey, Latham, Shea, Kelley,
Dubin & Quartararo, LLP
33 West Second Street
P.O. Box 9398
Riverhead, New York 11901

Page 5 of 5 Pages

**(c)    GRANT OF SPECIFIC AUTHORITY FOR AN AGENT TO MAKE GIFTS TO HIMSELF OR HERSELF: (OPTIONAL)**

*If you wish to authorize your agent to make gifts to himself or herself, you must grant that authority in this section, indicating to which agent(s) the authorization is granted, and any limitations and guidelines.*

[       ] I grant specific authority for the following agent(s) to make the following gifts to himself or herself:

_____, as my agent, or _____, as my successor agent, in the event every agent designated herein is unable or unwilling to serve, may:

My agent(s) or successor agent(s) shall have the authority to make any or all of the gifts, authorized in subdivision "(b)" above, subject to any limitations contained therein, to himself or herself.

This authority must be exercised pursuant to my instructions, or otherwise for purposes which the agent reasonably deems to be in my best interest.

**(d)    ACCEPTANCE BY THIRD PARTIES:**

I agree to indemnify the third party for any claims that may arise against the third party because of reliance on this Statutory Gifts Rider.

**(e)    SIGNATURE OF PRINCIPAL AND ACKNOWLEDGEMENT:**

In Witness Whereof I have hereunto signed my name on _16th_ day of _May_, 2014.

PRINCIPAL signs here → _Anne Renee Testa_
_____
ANNE RENEE TESTA


State of New York)
              ) ss.:
County of Suffolk)

On the _16th_ day of _May_, in the year 2014, before me, the undersigned, a Notary Public in and for said state, personally appeared **ANNE-RENEE TESTA**, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

_____
Notary Public

CHRISTOPHER KELLEY
Notary Public, State of New York
No. 4561401, Qual. Suffolk Co.
Commission Expires July 31, 20[ ]

Page 4 of 5 Pages

Bargain and Sale Deed, with Covenant against Grantor's Acts - Individual or Corporation (single sheet)
This document has been prepared on a computer-generated form containing text and punctuation identical to Blumberg's standard form 8002.

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT - THIS INSTRUMENT SHOULD BE USED
BY LAWYERS ONLY

*This Indenture,* made this 2 1st day of November two thousand and fourteen

*Between*



Anne-Renee Tanner                                    as sole *Trustee* of THE ANNE RENEE
TANNER RESIDENCE TRUST, u/t/i dated as of May 15, 1996, 25 Huckleberry Lane,
East Hampton, New York 11937

*party of the first part,*

Anne-Renee Testa, 25 Huckleberry Lane, East Hampton, New York 11937,

*party of the second part,*

*Witnesseth,* that the party of the first part, in consideration of Ten Dollars and other
valuable consideration paid by the party of the second part, does hereby grant and
release to the party of the second part, the heirs or successors and assigns of the party of
the second part forever,

*All* that certain plot, piece or parcel of land, with the buildings and improvements
thereon erected, situate, lying and being in

*If major filed subdivision, describe map & lot number*

Town of East Hampton, County of Suffolk and State of New York, being more
particularly bounded and described on Schedule A attached hereto and by this reference
made an integral part hereof.

Being and intended to be the same premises conveyed to the party of the first part by
deed dated May 15, 1996 and recorded on June 11, 1996 in the Office of the Suffolk
County Clerk in Liber 11777 at page 718.

*Suffolk County Tax Map Number:* ~~300-193.02-2-59~~  300-193.01-2-5

*Together* with all right, title and interest, of the party of the first part in and to any
streets and roads abutting the above described premises to the center lines thereof;
*Together* with the appurtenances and all the estate and right of the party of the first part
in and to said premises; *To have and to hold* the premises herein granted unto the party
of the second part, the heirs or successors and assigns of the party of the second part
forever.

*And* the party of the first part covenants that the party of the first part has not done or
suffered anything whereby the said premises have been encumbered in any way
whatever, except as aforesaid.

*And* the party of the first part, in compliance with Section 13 of the Lien Law, covenants
that the party of the first part will receive the consideration for this conveyance and will
hold the right to receive such consideration as a trust fund to be applied first for the
purpose of paying the cost of improvement and will apply the same first to the payment
of the cost of the improvement before using any part of the total of the same for any
other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this
indenture so requires.

*In witness whereof,* the party of the first part has duly executed this deed the day and
year first above written.

*In presence of:*

_____
Anne-Renee Tanner, as Trustee



EXHIBIT
B

State of New York: County of Suffolk; ss.:

On the 21st day of NOVEMBER _____ in the year 2014, before me, the undersigned, personally appeared Anne-Renee Tanner, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

CHRISTOPHER KELLEY
Notary Public, State of New York
No. 01KE6311... Cmm. Suffolk County
Commission Expires July 31, 20...

State of New York: County of Suffolk; ss.:

On the _____ day of _____ in the year 2014, before me, the undersigned, personally appeared personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that ___ executed the same in ___ capacity, and that by ___ signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

*Bargain and Sale Deed*
*With Covenant against Grantor's Acts*

The Anne Renee Tanner Residence Trust

*To*

Anne-Renee Testa

*Record and Return to:*
*Christopher Kelley, Esq.*
*P.O. Box 9398*
*Riverhead, New York 11901*

## Schedule A

ALL that certain plot, piece, or parcel of land situate, lying and being a part of a condominium in the Town of East Hampton, County of Suffolk and State of New York, known and designated as Unit Number 23, Section II together with a 3.26315% undivided interest in the common elements of a condominium hereinafter described as the same is defined in the Declaration of Condominium hereinafter referred to.

The real property above described is a Unit shown on the plans of a condominium prepared and certified by George H. Walbridge Co., Darrell A. Weaver, Jr., L.S. #33708, and filed in the Office of the Clerk of the County of Suffolk on the 8th day of May, 1986 and Map Number 135 defined in the Declaration of Condominium entitled, Georgica Estates Condominium II made by Georgica Estates Associates dated April 10, 1986 and recorded in the Suffolk County Clerk's Office on the 8th day of May, 1986 in Liber 10033 of conveyances at page 331 of the property is described as follows:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of East Hampton, County of Suffolk and State of New York, and being known and designated as Lot Number 9 on a certain map entitled, "Map of Georgica Estates" which map was filed in the office of the Clerk of the County of Suffolk on December 29, 1983 as Map Number 7677.

Said Common Area described as follows:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of and Town of East Hampton, County of Suffolk and State of New York, bounded and described as follows:

BEGINNING at a concrete monument marking the southerly corner of the premises herein described and the intersection of the northwesterly side of Green Hollow Road, a public highway, and the northeasterly side of Montauk Highway; and

RUNNING THENCE from the point of beginning along the northeasterly side of Montauk Highway the following two courses and distances:

(1)  North 67 degrees 50 minutes 35 seconds West 329.46 feet to a concrete monument; and

(2)  North 72 degrees 14 minutes 00 seconds West 942.05 feet to a concrete monument and premises of Francis T. George Verheyden;

THENCE along said premises of Francis T. George Verheyden the following two courses and distances:

(1)  North 03 degrees 30 minutes 10 seconds East 546.27 feet to a concrete monument;

    Continued..

Schedule A

(2)   North 72 degrees 14 minutes 00 seconds West 406.92 feet to a concrete monument and the easterly side of Georgica Buckskill Road, a public highway;

THENCE along said easterly side of Georgica Buckskill Road and Stephen Hands Path, the following five courses and distances:

(1)   North 07 degrees 03 minutes 09 seconds East 292.14 feet to a concrete monument;

(2)   North 05 degrees 58 minutes 35 seconds West 489.19 feet to a concrete monument;

(3)   North 01 degrees 24 minutes 40 seconds West 307.55 feet to a concrete monument;

(4)   North 01 degrees 16 minutes 00 seconds West 326.78 feet to a concrete monument;

(5)   North 04 degrees 02 minutes 30 seconds West 101.71 feet to an iron railroad monument on the southerly side of land now or formerly of Long Island Railroad MTA;

THENCE along said premises now or formerly of Long Island Railroad MTA North 75 degrees 45 minutes 41 seconds East 1452.43 feet to an iron railroad monument and the northwesterly side of Buckskill Road, a public highway;

THENCE along said southwesterly side of Buckskill Road, the following two courses and distances:

(1)   South 54 degrees 58 minutes 39 seconds East 798.41 feet to a concrete monument;

(2)   South 66 degrees 22 minutes 39 seconds East 223.63 feet to a concrete monument and the westerly side of Green Hollow Road, a public highway;

THENCE along the westerly side of Green Hollow Road, the following three courses and distances:

(1)   South 18 degrees 15 minutes 45 seconds West 226.29 feet to a concrete monument;

(2)   South 16 degrees 15 minutes 35 seconds West 158.15 feet to a concrete monument;

(3)   South 13 degrees 15 minutes 45 seconds West 353.50 feet to a concrete monument and lands now or formerly of Jack Wilkinson and Uno Wilkinson;

Continued..

11777 PG718

## Schedule A

THENCE along said premises now or formerly of Jack Wilkinson and Uno Wilkinson the following three courses and distances:

(1)   North 71 degrees 25 minutes 33 seconds West 866.35 feet to a concrete monument;

(2)   South 18 degrees 34 minutes 27 seconds West 246.48 feet to a concrete monument;

(3)   South 70 degrees 43 minutes 33 seconds East 124.60 feet to a concrete monument and lands now or formerly of Minnie V. Parker;

THENCE along said premises now or formerly of Minnie V. Parker the following six courses and distances:

(1)   South 17 degrees 57 minutes 57 seconds West 403.86 feet to a concrete monument;

(2)   North 72 degrees 18 minutes 13 seconds West 115.23 feet to a marble monument;

(3)   South 03 degrees 48 minutes 37 seconds West 361.31 feet to a marble monument;

(4)   South 80 degrees 37 minutes 13 seconds East 173.27 feet to a concrete monument;

(5)   South 76 degrees 50 minutes 43 seconds East 305.59 feet to a concrete monument; and

(6)   South 79 degrees 56 minutes 33 seconds East 331.52 feet to a marble monument on the westerly side of Green Hollow Road;

THENCE along said westerly side of Green Hollow Road the following three courses and distances:

(1)   South 17 degrees 00 minutes 45 seconds West 258.36 feet to a concrete monument;

(2)   South 10 degrees 04 minutes 05 seconds West 173.58 feet to a concrete monument;

(3)   South 17 degrees 00 minutes 45 seconds West 428.50 feet to the northerly side of Montauk Highway and the point or place of BEGINNING.

Bargain and Sale Deed, with Covenant against Grantor's Acts - Individual or Corporation  (single sheet)
This document has been prepared on a computer-generated form containing text and punctuation identical to Blumberg's standard form 8002.

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT – THIS INSTRUMENT SHOULD BE USED
BY LAWYERS ONLY

*This Indenture,* made this 21st day of NOVEMBER two thousand and fourteen

*Between*

*Anne Renee Testa, 25 Huckleberry Lane, East Hampton, New York 11937*

*party of the first part,*

SETH GROSSMAN, residing at 215 East 68ᵗʰ Street, New York, NY 10065 and JOY
GROSSMAN, residing at 21-13 45ᵗʰ Avenue, New York, NY 11101, as Tenants-In-
Common,

*party of the second part,*

*Witnesseth,* that the party of the first part, in consideration of Ten Dollars and other
valuable consideration paid by the party of the second part, does hereby grant and
release to the party of the second part, the heirs or successors and assigns of the party of
the second part forever,

*All* that certain plot, piece or parcel of land, with the buildings and improvements
thereon erected, situate, lying and being in

*If major filed subdivision, describe map & lot number*

*Town of East Hampton, County of Suffolk and State of New York, being more
particularly bounded and described on Schedule A attached hereto and by this reference
made an integral part hereof.*

Being and intended to be the same premises conveyed to the party of the first part by
deed dated May 15, 1996 and recorded on June 11, 1996 in the Office of the Suffolk
County Clerk in Liber 11777 at page 718.

*Suffolk County Tax Map Number:* 900-3x2x28  300-193.01-2-5

*Together* with all right, title and interest, of the party of the first part in and to any
streets and roads abutting the above described premises to the center lines thereof;
*Together* with the appurtenances and all the estate and right of the party of the first part
in and to said premises; *To have and to hold* the premises herein granted unto the party
of the second part, the heirs or successors and assigns of the party of the second part
forever.

*And* the party of the first part covenants that the party of the first part has not done or
suffered anything whereby the said premises have been encumbered in any way
whatever, except as aforesaid.

*And* the party of the first part, in compliance with Section 13 of the Lien Law, covenants
that the party of the first part will receive the consideration for this conveyance and will
hold the right to receive such consideration as a trust fund to be applied first for the
purpose of paying the cost of improvement and will apply the same first to the payment
of the cost of the improvement before using any part of the total of the same for any
other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this
indenture so requires.

*In witness whereof,* the party of the first part has duly executed this deed the day and
year first above written.

*In presence of:*

Anne-Renee Testa


EXHIBIT
C

State of New York: County of Suffolk; ss.:

On the 21st day of November in the year 2014, before me, the undersigned, personally appeared Anne-Renee Tanner, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

CHRISTOPHER KELLEY
Notary Public, State of New York
No. 4740143, Suffolk County
Commission Expires July 23, 20__

State of New York: County of Suffolk; ss.:

On the _____ day of _____ in the year 2014, before me, the undersigned, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that ___ executed the same in ___ capacity, and that by ___ signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

### Bargain and Sale Deed
#### With Covenant against Grantor's Acts

Anne-Renee Testa

*To*

Grossman and Grossman

*Record and Return to:*
*Christopher Kelley, Esq.*
*P.O. Box 9398*
*Riverhead, New York 11901*

Schedule A

ALL that certain plot, piece, or parcel of land situate, lying and being a
part of a condominium in the Town of East Hampton, County of Suffolk and State
of New York, known and designated as Unit Number 23, Section II together with
a 9.28315% undivided interest in the common elements of a condominium
hereinafter described as the same is defined in the Declaration of Condominium
hereinafter referred to.

The real property above described is a Unit shown on the plans of a
condominium prepared and certified by George H. Walbridge Co., Darrell A.
Weaver, Jr., L.S. #33708, and filed in the Office of the Clerk of the County
of Suffolk on the 8th day of May, 1986 and Map Number 135 defined in the
Declaration of Condominium entitled, Georgica Estates Condominium II made by
Georgica Estates Associates dated April 10, 1986 and recorded in the Suffolk
County Clerk's Office on the 8th day of May, 1986 in Liber 10033 of
conveyances at page 331 of the property is described as follows:

ALL that certain plot, piece or parcel of land, situate, lying and being in
the Town of East Hampton, County of Suffolk and State of New York, and being
known and designated as Lot Number 9 on a certain map entitled, "Map of
Georgica Estates" which map was filed in the Office of the Clerk of the County
of Suffolk on December 29, 1983 as Map Number 7677.

Said Common Area described as follows:

ALL that certain plot, piece or parcel of land, situate, lying and being
in the Village of and Town of East Hampton, County of Suffolk and State of
New York, bounded and described as follows:

BEGINNING at a concrete monument marking the southerly corner of the premises
herein described and the intersection of the northwesterly side of Green
Hollow Road, a public highway, and the northeasterly side of Montauk Highway;
and

RUNNING THENCE from the point of beginning along the northeasterly side of
Montauk Highway the following two courses and distances:

(1)  North 67 degrees 50 minutes 35 seconds West 329.46 feet to a concrete
monument; and

(2)  North 72 degrees 14 minutes 00 seconds West 942.05 feet to a concrete
monument and premises of Francis T. George Verheyden;

THENCE along said premises of Francis T. George Verheyden the following
two courses and distances:

(1)  North 03 degrees 30 minutes 10 seconds East 546.27 feet to a concrete
monument;

Continued..

Schedule A

(2)  North 72 degrees 14 minutes 00 seconds West 406.92 feet to a concrete monument and the easterly side of Georgica Buckskill Road, a public highway;

THENCE along said easterly side of Georgica Buckskill Road and Stephen Hands Path, the following five courses and distances:

(1)  North 07 degrees 03 minutes 09 seconds East 292.14 feet to a concrete monument;

(2)  North 05 degrees 58 minutes 35 seconds West 489.19 feet to a concrete monument;

(3)  North 01 degrees 24 minutes 40 seconds West 307.55 feet to a concrete monument;

(4)  North 01 degrees 16 minutes 00 seconds West 326.78 feet to a concrete monument;

(5)  North 04 degrees 02 minutes 30 seconds West 101.71 feet to an iron railroad monument on the southerly side of land now or formerly of Long Island Railroad MTA;

THENCE along said premises now or formerly of Long Island Railroad MTA North 75 degrees 45 minutes 41 seconds East 1452.43 feet to an iron railroad monument and the northwesterly side of Buckskill Road, a public highway.

THENCE along said southwesterly side of Buckskill Road, the following two courses and distances:

(1)  South 54 degrees 58 minutes 39 seconds East 798.41 feet to a concrete monument;

(2)  South 66 degrees 22 minutes 39 seconds East 223.63 feet to a concrete monument and the westerly side of Green Hollow Road, a public highway;

THENCE along the westerly side of Green Hollow Road, the following three courses and distances:

(1)  South 18 minutes 15 minutes 45 seconds West 226.28 feet to a concrete monument;

(2)  South 16 degrees 15 minutes 35 seconds West 158.15 feet to a concrete monument;

(3)  South 13 degrees 15 minutes 45 seconds West 353.50 feet to a concrete monument and lands now or formerly of Jack Wilkinson and Uno Wilkinson;

continued..

11777 PG718

## Schedule A

THENCE along said premises now or formerly of Jack Wilkinson and Uno Wilkinson the following three courses and distances:

(1) North 71 degrees 25 minutes 33 seconds West 866.35 feet to a concrete monument;

(2) South 18 degrees 34 minutes 27 seconds West 246.48 feet to a concrete monument;

(3) South 70 degrees 43 minutes 33 seconds East 124.60 feet to a concrete monument and lands now of formerly of Minnie V. Parker;

THENCE along said premises now or formerly of Minnie V. Parker the following six courses and distances:

(1) South 17 degrees 57 minutes 57 seconds West 403.86 feet to a concrete monument;

(2) North 72 degrees 18 minutes 13 seconds West 115.23 feet to a marble monument;

(3) South 03 degrees 48 minutes 37 seconds West 361.31 feet to a marble monument;.

(4) South 80 degrees 37 minutes 13 seconds East 173.27 feet to a concrete monument;

(5) South 76 degrees 50 minutes 43 seconds East 305.59 feet to a concrete monument; and

(6) South 79 degrees 56 minutes 33 seconds East 331.52 feet to a marble monument on the westerly side of Green Hollow Road;

THENCE along said westerly side of Green Hollow Road the following three courses and distances:

(1) South 17 degrees 00 minutes 45 seconds West 258.36 feet to a concrete monument;

(2) South 10 degrees 04 minutes 05 seconds West 173.58 feet to a concrete monument;

(3) South 17 degrees 00 minutes 45 seconds West 428.50 feet to the northerly side of Montauk Highway and the point or place of BEGINNING.



## CHASE PRIVATE CLIENT

May 13, 2015

**VIA FIRST CLASS MAIL**

Anne Renee Testa
1285 Zydeco Ct.
The Villages, FL 32163-2756

Seth H. Grossman
215 E. 68th St. Apt 17P
New York, NY 10065-5726

**Important Information Regarding Your Chase Private Client Account ending in: 5437**

Dear Mrs. Testa and Mr. Grossman:

Please accept this letter as formal notification that Chase Private Client (CPC) placed a restriction on your joint account at the request of one of the joint tenants. Therefore, as permitted by your account agreement, we elected to freeze your account to prevent all distributions.

CPC will lift the restriction if we receive: 1) joint, written instructions, with notarized signatures from both parties registered on the account, 2) a court order instructing CPC to remove the restriction or distribute the assets, or 3) a completed Joint Tenant Removal Form in conjunction with a letter of instruction from the removed tenant, with a notarized signature, in each case satisfactory to us. Please note that this restriction does not prevent CPC from accepting and acting on trade instructions received from either joint party without prior notice to the other joint party.

In addition, you may also request, through your Financial Advisor, the receipt of duplicate correspondence at an additional address to your current address of record.

To place trades on your account, or for any questions regarding this matter, please contact your Private Client Advisor, Eric Barnett at 1-352-259-7261. Thank you for your cooperation.

**Chase Private Client**

cc:    Erik Barnett, Private Client Advisor, via e-mail
       Richard Ivey Supervisory Manager, via e-mail



Deposit products and services o... Member FDIC.
"Chase Private Client" is the marketing name for a business within ...liaries. Bank products and services are offered by
JPMorgan Chase Bank, N.A. and its affiliates. Securities ar... ...C (JPMS), member FINRA, NYSE and SIPC.
JPMS is an affi...

Investment products: Not FDI... ...May lose value

EXHIBIT

D